## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHRISTEL T.,[1]                                )
                                               )
                     Plaintiff,                )
                                               )          **CIVIL ACTION**
v.                                             )
                                               )          **No. 20-1261-JWL**
KILOLO KIJAKAZI,[2]                            )
Acting Commissioner of Social Security,        )
                                               )
                     Defendant.                )
   _____ )


### MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) assessment of Plaintiff's Mental Residual Functional Capacity (MRFC) or evaluation of the opinions of the state agency psychological consultants, the court ORDERS that

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g)

AFFIRMING the Commissioner's final decision.

## I.      Background

Plaintiff protectively filed an application for DIB on November 29, 2017 and an

application for SSI benefits on January 29, 2018. (R. 13, 222, 228). After exhausting

administrative remedies before the Social Security Administration (SSA), Plaintiff filed

this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C.

§ 405(g). Plaintiff claims the ALJ erred in assessing her mental RFC and in failing to

resolve the material ambiguities or inconsistencies between the opinion of the state

agency psychologist, Dr. Iskander, and the RFC assessed.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052

(10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he

findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual

findings are supported by substantial evidence in the record and whether he applied the

correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to

the weight, not the amount, of the evidence. It requires more than a scintilla, but less

than a preponderance; it is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see

also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only <u>supports</u> [a contrary] conclusion, but <u>compels</u> it." <u>I.N.S. v. Elias-Zacarias</u>, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005); <u>see also</u>, <u>Bowling v. Shalala</u>, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues <u>de novo</u>, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or

equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in Plaintiff's Social Security Brief.

## II.    Discussion

Plaintiff claims the MRFC assessed is not supported by substantial evidence because the ALJ "mischaracterize[ed] the record and fail[ed] to explain how the evidence supported the mental RFC."  (Pl. Br. 5).  Plaintiff argues this is so because the ALJ "mischaracterized the nature of [Plaintiff]'s interactions with Nurse Weitzel[,] incompletely addressed the narrative from her prior employer[, and] failed to address the waxing and waning nature of [Plaintiff's] mental impairments."  Id. at 7.  She

4

acknowledges the ALJ's rationale is supported by the record in many aspects (Pl. Br. 7)

and that he "did properly follow the regulatory framework of 20 C.F.R. §§ 404.1520c and

416.920c in assessing the persuasiveness of the opinion[s]." Id. at 11.  But she argues the

ALJ failed to acknowledge other evidence in the record which supports a contrary

finding, id. 7-8, and that "[a] reasonable mind would not accept the ALJ's rationale as

sufficient to support his ultimate conclusion" regarding the persuasiveness of the medical

opinions of the psychological consultant, Dr. Hackney, or Plaintiff's treating APRN,

Nurse Weitzel.  Id. at 11-12.

Plaintiff also claims the ALJ found Dr. Iskander's opinion[3] persuasive but failed to

resolve the conflict between her opinion and the RFC he assessed.  She argues, "what

was missing from the ALJ's RFC assessment is a narrative discussion explaining why Dr.

Iskander's opinion concerning the need for a supportive environment was not adopted, as

required by SSR 96-8p, 1996 WL 374184 at *7." Id. at 14.  She argues the inconsistency

presented and unresolved is between Dr. Iskander's opinion that Plaintiff needs a

supportive environment "and the ALJ's analysis of [Plaintiff]'s adaptive abilities, which

he found [only] mildly limited." Id. at 15.

In her Response Brief, the Commissioner argues the ALJ's decision was a

reasonable evaluation of the record evidence and he did not mischaracterize the evidence

---

[3] The court recognizes that the evaluations performed by state agency physicians and psychologists such as Dr. Iskander are more correctly called prior administrative medical findings.  20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).  However, they are evaluated in the same manner and by the same standards as medical opinions and are commonly called medical opinions.  The court follows the common practice here.

but "reasonably found [Plaintiff's] complaints to be out-of-proportion to the" record evidence.  (Comm'r Br. 4-5).  She argues that although the ALJ did not specifically discuss each of Dr. Iskander's findings he made no reversible error.  Id. at 8.  She argues even assuming Plaintiff could perform only reasoning level one jobs and the ALJ erred in finding Plaintiff could perform reasoning level two jobs, the job of cleaner relied upon by the ALJ, was reasoning level one, consisted of over 922,000 jobs in the economy, and by itself, establishes a significant number of jobs of which Plaintiff is capable.  Id. at 9.  She argues Dr. Iskander's opinion regarding "minimal interpersonal expectations" was accounted for by the limitation to occasional interactions with supervisors, co-workers, or the public, id. (quoting R. 121, and citing R. 21), and the opined limitation to work "in a supportive environment" is undefined and to the extent it relates to the mental demands of work is subsumed within the ALJ's limitation to jobs involving only simple tasks and only occasional interactions with others.  Id. at 10 (quoting R. 121).

**A.     The ALJ's Relevant Findings**

In evaluating the severity of Plaintiff's impairments, the ALJ stated:

> The claimant testified to a history of low back pain and hip pain that is not supported by the medical record.  The claimant alleged she was diagnosed with scoliosis, osteoarthritis, and bulging discs.  Dr. James Henderson notes a very difficult physical examination in Exhibit 4F, wherein the claimant was less than cooperative, complaining of pain and taking lengthy time to perform any maneuvers, even standing or walking, which made it impossible to assess range of motion or assess orthopedic maneuvering. She complained of pain so severe she was placed in a wheelchair, due to her complaints.  Conversely, Dr. Hackney, during a psychological evaluation 7 days later, noted that while she states she has some problems with her lower back but did not report the extreme symptoms in terms of physical limitations, and certainly did not place the claimant in a wheelchair.  (Exhibit 5F).  Although, the claimant also did not express such

> extreme psychological limitations to Dr. Henderson, as she did not Dr.
> Hackney [sic], which seems problematic to the claimant's consistency.

(R. 16).  The ALJ noted other such inconsistencies and concluded, "This pattern of excessive subjective symptoms with minimal objective support is repeated in the medical record, and it problematizes the claimant's consistency and the persuasiveness of her allegations."  Id. at 16-17.

In his step three analysis the ALJ found Plaintiff has moderate limitations in the three mental functional areas of understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace.  Id. 17.  He found she has only mild limitation in the fourth mental functional area of adapting or managing oneself.  Id. 18.

The ALJ assessed Plaintiff with only non-exertional, mental limitations and assessed her MRFC:

> She can understand, remember, and apply instructions to perform simple
> tasks (jobs SVP 2 and below).  She can make work decisions
> commensurate with those tasks.  She can concentrate to work at a
> consistent pace for two-hour periods before and after customary breaks.
> She can tolerate occasional interactions with supervisors, coworkers, and
> the general public.

Id.

The ALJ found Plaintiff's allegations of symptoms resulting from her impairments are not consistent with the record evidence and explained:

> The claimant has alleged severe symptoms from OCD and other mental
> health issues that she states limit her from even leaving her house.  As
> noted, she gave extreme symptoms to one area of consultative examination,
> and then focused on another extreme to the other examiner.  (Exhibit 4F,
> 5F).  The claimant has had periodic treatment from Advocates for

7

Behavioral Health, and a statement from her treating APRN [(Nurse Weitzel)] notes the claimant's main stressor is trying to get disability benefits, which is causing her anxiety.  (Exhibit 8F).  That note in May 2018 noted the claimant was improving emotionally and physically, with good attention to her activities of daily living (which contradicts her testimony), was alert/oriented, and states she wants to function at a higher level.  The notes states [sic] a continuation of her medication regimen was warranted.  This is consistent with an earlier treatment notes [sic] from February 2018 (Exhibit 2F), and a later note in Exhibit 10F.  These notes are consistent, and they do not show the claimant was in therapy, but only in medication management, and did not suffer the severe symptoms that would seem to be indicated.  This pattern shows the claimant improves with treatment, and is not as limited as her testimony would allow.

(R. 19-20).  Continuing in the same vein, the ALJ evaluated the relevant medical opinions:

The pattern also contradicts the one-time consultative examination of Dr. Gary Hackney, PhD.  (Exhibit 5F).  Dr. Hackney noted extreme limitations in intellectual functioning (could not spell world forward or backward), with poor attention and concentration, a poor fund of general information, and he noted extreme anxiety.  While there is little doubt his diagnosis are [sic] accurate, this is not consistent with examination results for physical conditions (See Exhibit 6F at 11 for an example) which show her mood and affect were appropriate.  It is also not consistent with the notations from her treating APRN, who documented constant improvement, attention to ADLs [(activities of daily living)] and intact attention/concentration.  His opinion is supported by his examination results, but when those results are placed in context of the claimant's pattern of allegations, as well as the other objective medical evidence in the record, it loses much of its persuasive value, and ultimately, while the claimant is limited, Dr. Hackney's opinion does not provide a persuasive basis for determining functional limitations.

***

The psychological opinions of the State Agency (Exhibit 1A, 2A, 7A, 8A) are persuasive.  At reconsideration, Dr. Tiffany Iskander, PhD, noted that the claimant would do best in a simple work environment with a limited interpersonal expectation, which was in support of the initial opinion by Dr. Gretchen Brandhorst, PsyD.  She noted the claimant was not always compliant with medications, and that her activity level and other evidence did not fully support Dr. Hackney's recommendations.  These opinions are

persuasive as they are well supported with explanation from mental health experts, as well as consistent with the overall medical record.

(R. 20).

## B. Analysis

The court finds no error in the ALJ's evaluation. As the court's citations above to the ALJ's decision demonstrate, the ALJ discounted Plaintiff's allegations of symptoms because of a pattern of exaggeration of symptoms apparently depending on the audience of her reports. Plaintiff does not address the ALJ's rationale in this regard and the court's review reveals that the evidence supports the ALJ's findings. Thus, the ALJ was justified in crediting Plaintiff's allegations of limitations only to the extent they were confirmed by objective medical findings and other verifiable evidence in the record. Moreover, the ALJ explained that while he credited Dr. Hackney's <u>diagnoses</u> he would not accept the <u>functional limitations</u> he opined because Plaintiff was prone to exaggerate her symptoms, Dr. Hackney's was a one-time examination, his examination was contradicted by other evidence and examinations in the record including Nurse Weitzel's notes, and Plaintiff's activity levels contradicted Dr. Hackney's opined limitations. As quoted above, the ALJ went on to find the state agency psychologists' opinions were persuasive because they were consistent with and supported by the verifiable evidence in the record which did not fully support Dr. Hackney's opinion.

Plaintiff's arguments (that the ALJ failed to acknowledge other evidence in the record which supports a contrary finding and that a reasonable mind would not accept the ALJ's rationale as sufficient to support his ultimate conclusions that the limitations Dr.

Hackney opined are not consistent with or supported by the record, and that Nurse

Weitzel's report of improvement justified discounting Dr. Hackney's functional

limitations) do not require a different result.  First, the court notes the ALJ did not rely

solely on the report of improvement in finding that Nurse Weitzel's reports discounted

Dr. Hackney's opinion, but he also relied on her reports of Plaintiff's attention to

activities of daily living and reports of "intact attention/concentration."  (R. 20).

Moreover, despite Plaintiff's contrary protestation, her argument that a reasonable mind

would not accept the ALJ's rationale and her appeal and citation to other record evidence

is simply a suggestion that the court should reweigh the evidence and substitute its

judgment for that of the ALJ.  None of the contrary evidence cited by Plaintiff compels a

different conclusion than that of the ALJ in this case.  To be sure, there is record evidence

tending to support Plaintiff's allegations of disability, but the mere fact that there is

evidence which might support a contrary finding will not establish error in the ALJ's

determination.  "The possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's findings from being supported by

substantial evidence.  We may not displace the agency's choice between two fairly

conflicting views, even though the court would justifiably have made a different choice

had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and

bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Finally, the court finds no error in the ALJ's evaluation of Dr. Iskander's opinion.

Plaintiff recognizes that Dr. Iskander found that Plaintiff is able to perform one-to-two

step tasks in a supportive environment.  She argues that the ALJ erred in failing to

explain why he found Dr. Iskander's opinion persuasive but rejected her opinion that

Plaintiff is able to perform one-to-two step tasks in a supportive environment.  Plaintiff

has not shown that the ALJ rejected this opinion.  In her report, Dr. Iskander summarized

the evidence that had been received into the record after Dr. Brandhorst's initial

determination and then explained her conclusion:

> After reviewing the file in its entirety it is concluded that the claimant's
> functioning remains consistent with the functioning noted at the time of the
> initial determination.  The information supports that the claimant would
> have the ability to sustain 1-2 step tasks in a supportive environment with
> minimal interpersonal expectations.

(R. 121, 139) (emphasis added).  Dr. Iskander is merely noting that the information

relating to Plaintiff's functioning both at the initial determination and in her

reconsideration determination is consistent, and supports the ability to perform 1-2 step

tasks in a supportive environment.  Moreover, the ALJ also recognized this fact when he

said Dr. Iskander "noted that the claimant would do best in a simple work environment

with a limited interpersonal expectation, which was in support of the initial opinion by

Dr. Gretchen Brandhorst."  Id. at 20.  Thus, the state agency psychologists' opinions were

consistent and both Dr. Iskander and the ALJ recognized this fact.  Although the ALJ did

not use the wording of either Dr. Brandhorst or Dr. Iskander in his RFC assessment, he is

not required to do so.  Plaintiff has not shown that the ALJ rejected any of the opinions or

that there is an ambiguity or material inconsistency in the opinions which required

explanation.

Plaintiff's argument that there is an unresolved material ambiguity between Dr.

Iskander's opinion that Plaintiff needs a supportive environment "and the ALJ's analysis

of [her] adaptive abilities, which he found [only] mildly limited" (Pl Br. 15) makes no sense to the court.  The court sees no relationship in this case between adaptive abilities and a supportive environment and Plaintiff has not explained how the need of a supportive environment in the circumstances of this case suggests more than mildly limited ability to adapt or manage herself.

Plaintiff has shown no error in the ALJ's decision in this case.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated December 29, 2021, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**